## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANTHONY LAMAR WILLIAMS,

      Petitioner,

                               Civil No. 2:14-CV-10408
                               HONORABLE SEAN F. COX
                               UNITED STATES DISTRICT COURT

v.

SHERMAN CAMPBELL,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Anthony Lamar Williams, ("petitioner"), incarcerated at the Carson City Correctional Facility in Carson City, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C.§ 2254. In his *pro se* application, petitioner challenges his conviction for voluntary manslaughter, M.C.L.A. 750.321, larceny from a person, M.C.L.A. 750.357, possession of a firearm by a felon, M.C.L.A. 750.224f, felony-firearm, M.C.L.A. 750.227b, and being a third felony habitual offender, M.C.L.A. 769.11. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was originally charged with first-degree murder, larceny from a person, possession of a firearm by a felon, and felony-firearm. Following a preliminary examination, petitioner was bound over to the Wayne County Circuit Court on a reduced charge of second-degree murder and on the other charges. Petitioner was convicted following a jury trial of the lesser offense of

voluntary manslaughter and guilty as charged of the remaining offenses. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals's opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g., Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant shot and killed Cortez McCollum in the city of Detroit. Defendant does not dispute this fact. He claims that he acted in self-defense. Shayvonna Smith was the only known eyewitness. When she failed to appear at the preliminary examination, the prosecution obtained a material witness detainer in order to produce her at the rescheduled examination.
>
> Defendant argues that, under the circumstances, the prosecution's efforts to produce Smith as a witness at trial fell short of due diligence. Therefore, defendant argues, Smith's prior testimony was improperly introduced at trial.
>
> . . . .
> Defendant's theory at trial was that he had acted in self-defense. Smith testified at the preliminary examination that the victim had initiated a physical fight with defendant by striking defendant with a glass bottle. According to Smith, it was only after being struck that defendant drew a gun and shot the victim.

*People v. Williams*, No. 310441, 2013 WL 3815633, at * 1-2 (Mich. Ct. App. July 23, 2013).

Petitioner's conviction was affirmed on appeal. *Id., lv. den. lv. Den.* 495 Mich. 903, 839 N.W.2d 455 (Mich. 2013).

Petitioner filed a petition for writ of habeas corpus, seeking habeas relief on the following grounds: I. Due diligence (abuse of discretion); and II. Sixth Amendment constitutional right to confrontation.

The petition was dismissed without prejudice, because petitioner had failed to properly exhaust his second claim alleging a violation of the Confrontation Clause with the state courts. *Williams v. Rapelje*, No. 2:14-CV-10408, 2014 WL 4537438 (E.D. Mich. Sept. 11, 2014).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People*

*v. Williams*, No. 12-000747-FC (Third Jud.Cir.Ct., Mar. 20, 2015). The Michigan appellate courts denied petitioner leave to appeal. *People v. Williams*, No. 328905 (Mich.Ct.App. Nov. 4, 2015); *lv. Den.* 499 Mich. 968, 880 N.W.2d 538 (2016).

This Court granted petitioner's motion to reopen the case and to file an amended petition. *Williams v. Campbell*, No. 2:14-CV-10408, 2017 WL 895818 (E.D. Mich. Mar. 6, 2017).

In his amended habeas petition, petitioner seeks relief on the following grounds:

I. Whether or not petitioner was denied his constitutional right to the effective assistance of counsel under the Sixth Amendment when counsel failed to do a thorough pretrial investigation which would have led to the discovery of additional witnesses that supported petitioner's theory of defense [self-defense]; counsel's failure to investigate was a miscarriage of justice and denied petitioner right to a fair trial. Thus due process of law. U.S. Const. Ams. VI, XIV.

II. Whether or not petitioner was deprived of counsel where the Wayne County [Circuit Court]'s unconstitutional practice of assigning counsel on the exact same day of the preliminary examination, which has already been federally condemned, constitutes a state impediment to the effective assistance of counsel and effectively served to constructively deprive petitioner of his right to counsel at all critical stages of the judicial proceedings, where due to the appointment on the same day of the preliminary examination counsel did not have the opportunity to meaningfully consult with his client, to receive necessary discovery, and to prepare for the case either factually or legally requiring automatic reversal because structural error resulted, appellate counsel was ineffective where counsel failed and/or refused to file this issue as a supplemental issue on direct appeal. U.S. Const. Ams. VI, XIV.

III. Whether or not petitioner was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel during the plea bargaining phase proceedings. U.S. Const. Ams. VI, XIV.

IV. Whether or not petitioner was denied effective assistance of appellate counsel for failure to raise obvious stronger issues that can be considered "dead-bang" winners, thus entitling petitioner to a new appeal of right.

V. Whether or not petitioner is entitled to a new trial where the trial court abused its discretion in finding due diligence as to Ms. Smith, a res gestae witness, thus permitting admission of her previous testimony.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562

U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court

has emphasized "that even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Discussion

**A. Claims # 1-4. The ineffective assistance of counsel claims.**

The Court discusses petitioner's ineffective assistance of counsel claims together for judicial clarity.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must

demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that

standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

As an initial matter, petitioner appears to argue throughout his claims that he was constructively denied the assistance of trial counsel, claiming that his counsel did very little, if anything at all, to investigate or present petitioner's case.

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F. 3d 851, 860 (6th Cir. 2002)(*quoting United States v. Cronic,* 466 U.S. 648, 659 (1984)). However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002).

In the present case, counsel's alleged errors did not rise to the level of the constructive denial of counsel, because counsel actively represented petitioner at his trial. *Moss,* 286 F. 3d at 860-62. Counsel appeared at petitioner's preliminary examination and cross-examined the witnesses. Counsel was able to get the original first-degree murder charge reduced to second-degree murder.

Contrary to petitioner's allegation in his second claim, counsel did engage in plea bargain negotiations with the prosecutor. Counsel at trial made an opening argument, cross-examined the witnesses, objected to the admission of Ms. Smith's preliminary examination testimony when the judge ruled that the witness was unavailable to testify in person, and made a closing argument. Counsel's theory throughout trial was that petitioner acted in self-defense. Counsel was successful in getting petitioner's second-degree murder charge reduced to voluntary manslaughter, thus avoiding the possibility of a life sentence for petitioner. *See* Mich. Comp. Laws § 750.317.

The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F. 3d 236, 247 (6th Cir. 2007)(citing *Bell*, 535 U.S. at 697). In the present case, counsel's alleged failures do not amount to a complete failure to provide a defense. The presumption of prejudice therefore does not apply and petitioner would be required to show that he was actually prejudiced by counsel's alleged omissions in order to obtain habeas relief. *Id.*

Petitioner further argues that counsel's failure to visit with petitioner in the county jail during the pre-trial period amounted to a *per se* denial of the effective assistance of counsel. The case of *Mitchell v. Mason*, 325 F. 3d 732 (6th Cir. 2003), upon which petitioner relies, does not support petitioner's position. In *Mitchell*, the Sixth Circuit held that the Supreme Court's holding in *Cronic* required a presumption of prejudice be applied to the petitioner's ineffective assistance claims. The Sixth Circuit's conclusion was based on the fact that during the entire course of defense counsel's seven month representation, he met with the petitioner for only six minutes immediately prior to trial, as well as the fact that in the month prior to trial counsel had been suspended from the practice of law, and therefore did not appear at motion hearings or do any other work on the case. *See Id.* at

742-44.

Petitioner's case is distinguishable from the petitioner's circumstances in *Mitchell*. Unlike in *Mitchell*, petitioner's counsel was not suspended from the practice of law at any point during his representation of petitioner. Petitioner does not allege that counsel failed to meet with him at all. Finally, as noted above, counsel provided a vigorous defense for petitioner at the preliminary examination and at trial. The Sixth Circuit in *Mitchell* itself distinguished that case from the circumstances present in petitioner's case, observing that if the issue had been only the failure of counsel to meet with petitioner and to prepare in the thirty-day period prior to trial, "it might have been proper to apply the *Strickland* analysis, for as *Bell* notes, counsel's failure in particular instances is evaluated under *Strickland*." *Mitchell*, 325 F. 3d at 742.

The *Mitchell* court also distinguished the Sixth Circuit's prior decision in *Dick v. Scroggy*, 882 F. 2d 192 (6th Cir. 1989). *See Mitchell*, 352 F. 3d at 744. In *Dick*, the Sixth Circuit applied the *Strickland* test to a claim based on defense counsel's failure to consult with the habeas petitioner at all except for a 30-45 minute meeting the day before trial. *See Dick*, 882 F. 2d at 197. "In short, *Mitchell* is a case involving unique facts-a complete failure to consult combined with counsel's suspension from the practice of law immediately prior to trial-and its holding is cabined by those unique facts." *See Willis v. Lafler*, No. 2007 WL 3121542, * 29 (E.D. Mich. October 24, 2007)(citing *Johnson v. Bradshaw*, 205 F. App'x. 426, 432-33 (6th Cir. 2007)).

The Sixth Circuit, in fact, has applied the *Strickland* standard in evaluating and rejecting an ineffective assistance of counsel claim based upon counsel's failure to consult with a habeas petitioner. *See Bowling v. Parker*, 344 F. 3d 487, 506 (6th Cir. 2003)(trial attorneys' alleged failure to consult with defendant did not prejudice defendant in capital murder case, and thus could not

amount to ineffective assistance, although attorneys allegedly met with defendant for less than one hour in preparing defense, where defendant failed to show how additional consultation with his attorneys could have altered outcome of trial). Accordingly, petitioner's ineffective assistance of counsel claim is subject to the *Strickland* standard and he would be required to show actual prejudice in order to obtain habeas relief.

In his first claim, petitioner argues that trial counsel was ineffective for failing to investigate a person by the name of Harold Lewis, who was with Shayvonna Smith at the time of the shooting. Petitioner also claims that counsel should have investigated his neighbors to see whether they had witnessed the shooting. Petitioner claims that these witnesses could have corroborated or enhanced Ms. Smith's testimony and could have bolstered petitioner's self-defense claim.

Petitioner is not entitled to relief for two reasons.

First, petitioner failed to attach any affidavit from these witnesses to his post-conviction pleadings in the state trial and appellate courts when he raised his ineffective assistance of counsel claim for the first time, nor has he provided this Court with any affidavit from these witnesses concerning their proposed testimony and willingness to testify on petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether Lewis or the neighbors would have been able to testify and what their

testimony would have been. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to investigate or call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Secondly, as the Michigan Court of Appeals noted in their opinion on petitioner's appeal of right, Ms. Smith's testimony supported petitioner's claim of self-defense. The alleged ineffectiveness of counsel in failing to call Ms. Smith's friend or petitioner's neighbors to testify in support of petitioner's self-defense claim was not prejudicial where their testimony would have been merely cumulative to Ms. Smith's testimony that petitioner shot the victim in self-defense. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001).

Petitioner further claims that trial counsel was ineffective for failing to hire a private investigator to assist with the defense. Petitioner, however, has failed to show that counsel would have obtained beneficial information had he hired an investigator, thus, he has failed to establish that he was prejudiced by counsel's failure to hire an investigator. *See Welsh v. Lafler*, 444 F. App'x. 844, 851 (6th Cir. 2011)(Defense counsel's failure to hire private investigator during prosecution for criminal sexual conduct did not prejudice defendant, and thus was not ineffective assistance; defendant failed to present sufficiently detailed and convincing account of what additional facts investigator could have discovered in support of defendant's innocence).

Petitioner is not entitled to relief on his first claim.

In his second claim, petitioner contends that he was constructively denied the assistance of trial counsel because his attorney was not appointed to represent him until the day of the preliminary examination.

The Supreme Court has held that in cases where a criminal defendant has been denied counsel at a preliminary hearing, "the test to be applied is whether the denial of counsel ... was harmless error." *Coleman v. Alabama*, 399 U.S. 1, 11 (1970)(citations omitted); *see also Adams v. Illinois,* 405 U.S. 278, 282-83 (1972)("the lack of counsel at a preliminary hearing involves less danger to 'the integrity of the truth-determining process at trial' than the omission of counsel at the trial itself or on appeal.")(internal quotation omitted). The Sixth Circuit has applied a harmless error analysis on habeas review of claims that a habeas petitioner was denied the right to counsel at a preliminary examination or hearing in a state criminal proceeding. *See Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir.1985); *McKeldin v. Rose*, 631 F.2d 458, 460–61 (6th Cir.1980); *see also Dodge v. Johnson,* 471 F. 2d 1249, 1252 (6th Cir. 1973)(record failed to establish that lack of counsel at preliminary examination prejudiced petitioner's rights at trial or in any way tainted finding of guilt).

Petitioner's claim fails because the preliminary examination was not conducted on the day of counsel's appointment. Counsel was appointed to represent petitioner on the date of his preliminary examination on December 13, 2011. The preliminary examination, however, was adjourned 4 times following counsel's appointment and the examination itself was not conducted until January 19, 2012. Thus, the actual preliminary examination was not actually held the day of counsel's appointment.

More importantly, a review of the preliminary examination shows that petitioner's counsel extensively cross-examined the witnesses. Counsel was able to get the examining magistrate to reduce the first-degree murder charge, which carries a mandatory nonparolable life sentence, to second-degree murder. Petitioner failed to show that he was actually prejudiced by trial counsel's allegedly inadequate preparation time at the preliminary examination; he is not entitled to relief on

his claim. *See Burgess v. Booker*, 526 F. App'x. 416, 432–33 (6th Cir. 2013).

In his third claim, petitioner argues that his counsel was ineffective during the plea bargaining process. Petitioner's argument is difficult to understand but he appears to argue that trial counsel did not familiarize himself well enough with the facts of his case or the law in order to be able to enter into meaningful plea bargain discussions. Petitioner claims that counsel failed to communicate any plea offers to him and/or rejected these offers without first consulting with petitioner. Petitioner alleges that trial counsel even agreed with the prosecutor that the facts of the case did not support a manslaughter conviction and thus counsel did not attempt to seek a plea bargain from the prosecutor reducing the second-degree murder charge to manslaughter.

At a pre-trial hearing, the judge asked if there were any offers and the prosecutor responded by stating: "not at this time, Your Honor, we're waiting for the transcript." (Tr. 2/3/2012, pp. 7–8).

At a second pre-trial hearing, defense counsel informed the judge that there had been ongoing plea negotiations with the prosecutor and that they had "talked numbers" and "possible resolutions" but that at that time counsel and petitioner "were prepared to go to trial. I did discuss this with my client, and that's where we're at, Judge." (Tr. 3/16/2012, p. 3). When the judge wanted to state the final plea offer on the record, the assistant prosecutor informed the judge that the parties had not reached a final plea agreement and that although the parties had discussed a reduction of the second-degree murder charge to manslaughter, they could not agree on a sentence agreement. (*Id.* at 5). The assistant prosecutor also advised the judge that her supervisor required a sit-down meeting with defense counsel with respect to a sentence agreement and that defense counsel had stated that if the prosecution was not considering going "below the bottom of the guidelines" there really was no point for the meeting. (*Id.* at 9). After more discussion, the trial judge stated that she

hoped that both counsel would go to the prosecutor's office and discuss what the sentence agreement would be with a manslaughter conviction. (*Id*. at 12).

At a subsequent special pre-trial hearing, the judge mentioned that she wanted petitioner to be cognizant of the self-defense jury instructions and explained to petitioner that using a gun to defend against a beer bottle might be a problem and that she wanted to make a record that petitioner might be better off pleading guilty to manslaughter. Defense counsel informed the judge that they had met with a prosecution supervisor and that a plea to manslaughter was not an option. (Tr., 3/23/2012, p. 5). The assistant prosecutor informed the judge that her supervisor did offer manslaughter but only with a sentence agreement that petitioner's sentence would be above the manslaughter guidelines. (*Id.* at 6). The assistant prosecutor reiterated that earlier discussions were for a manslaughter plea but the parties could not agree on numbers regarding the sentence. The assistance prosecutor emphasized that there never was an offer for manslaughter with manslaughter guidelines. (*Id.* at 8). After a brief recess the case was recalled and defense counsel informed the judge the defense was prepared to go to trial. (*Id.*, p. 10). When the judge asked that the plea offer be put on the record, the assistant prosecutor indicated that although the parties had discussed manslaughter there was no agreement on sentence and therefore there never had been a "solid offer." (*Id.*). The court then asked if there was a sentence offer or some kind of offer given to the defendant and the assistant prosecutor said "no." (*Id.* at 11).

On April 2, 2012, the first day of trial, the judge indicated that she had received a letter from petitioner in which he complained about his defense attorney and had questions about the plea offer, if any. (Tr. 4/2/2012, p. 3). The assistant prosecutor informed the judge that after speaking with the victim's relatives, she had conveyed a plea bargain offer for petitioner to plead guilty to

manslaughter and being a third felony habitual offender, with a sentence agreement of 15 to 30 years, plus an additional two years for felony-firearm. (*Id.,* pp. 3–4). Defense counsel confirmed that a plea agreement had been made and indicated that he had communicated the offer to petitioner. (*Id*. at 4). Defense counsel then asked petitioner whether he had discussed the offer with him and was it petitioner's decision to reject the offer. Petitioner replied "yes." (*Id.*). Counsel indicated that there had been a desire to obtain a plea bargain to manslaughter with a sentence of 5 to 15 years, but that the prosecutor's supervisor refused to agree to such a deal. (*Id.*, p. 5). The judge then indicated that while she did not like the policy of the prosecutor's office that a supervisor has to approve offers, she noted that petitioner had never been offered manslaughter with a sentence of 5 to 15. (*Id.* at pp. 5-6).

In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to establish that he or she was prejudiced by counsel's alleged deficiency, the defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). In addition, a court, in determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her action. *Id.* at 1389.

Petitioner is not entitled to relief for several reasons.

First, to the extent that petitioner believes that counsel failed to communicate a plea agreement to manslaughter with a sentence of five to fifteen years, this claim is defeated by the fact that there is no showing that such an offer was ever made. Petitioner has presented no evidence to this Court or to the state courts that the prosecutor was prepared to offer petitioner this plea bargain. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d at 771. In light of the fact that there is no evidence that the prosecutor ever offered petitioner a plea agreement of five to fifteen years, petitioner is unable to establish that trial counsel was ineffective for failing to properly advise petitioner regarding a non-existent plea offer. *See e.g. Guerrero v. U.S.*, 383 F. 3d 409, 419 (6th Cir. 2004).

Petitioner is unable to show that counsel was deficient with respect to the plea offer of 15 to 30 years that was made. Defense counsel indicated on the record that he had communicated this offer to petitioner. Petitioner indicated that he was not interested in the plea. Petitioner is unable to establish that counsel failed to inform him of this plea offer.

Petitioner is also unable to show that he was prejudiced by trial counsel's alleged deficiencies with respect to this plea agreement, because petitioner actually received a sentence of 12 to 30 years after going to trial, which was less than the 15 to 30 years that he was offered as part of the plea bargain. To establish prejudice in the context of a defense attorney's failure to properly advise a defendant on a plea bargain, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 566 U.S. 133, 147 (2012). Petitioner failed to show that he would have received a lesser sentence had he pleaded guilty; he is not entitled to relief

on his third claim.

In his fourth claim, petitioner alleges the ineffective assistance of appellate counsel.

Petitioner first claims that appellate counsel was ineffective for failing to help petitioner file a *pro se* Standard 4 appeal brief. [1]

A criminal defendant has no federal constitutional right to self-representation on direct appeal from a criminal conviction. *Martinez v. Court of Appeal of California,* 528 U.S. 152, 163 (2000). This is because the rights protected by the Sixth Amendment, including the right to self-representation, are rights that are available to prepare for trial and at the trial itself. However, the Sixth Amendment does not include any right to appeal. *Id.* at 160. The Supreme Court also rejected the idea that the right to self-representation on appeal could be grounded in the Due Process Clause [of the Fourteenth Amendment], because "[U]nder the practices that prevail in the Nation today, however, we are entirely unpersuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding." *Martinez,* 528 U.S. at 161. There is no constitutional entitlement to submit a *pro se* appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by appellate counsel. *See McMeans v. Brigano,* 228 F. 3d 674, 684 (6th Cir. 2000). By accepting the assistance of counsel, the criminal appellant waives his right to present *pro se* briefs on direct appeal. *Myers v. Johnson*, 76 F. 3d 1330, 1335 (5th Cir. 1996); *see also Henderson v. Collins,* 101 F. Supp. 2d 866, 881 (S.D. Ohio 1999); *aff'd in part, vacated in part on*

---

[1]  Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

*other grds,* 262 F. 3d 615 (6th Cir. 2001)(defendant who was represented by counsel and also sought to submit *pro se* brief upon appeal did not have right to such hybrid representation). Thus, any failure by appellate counsel to submit any *pro se* brief on behalf of petitioner does not present a constitutional question.

Petitioner also claims that appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, *see Evitts v. Lucey,* 469 U.S. 387, 396-397 (1985), and on first-tier discretionary appeals. *Halbert v. Michigan,* 545 U.S. 605, 609–10 (2005). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes,* 463 U.S. 745, 751 (1983). Because petitioner has failed to show that his trial counsel was ineffective, petitioner is unable to establish that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on his direct appeal. *See e.g. Fautenberry v. Mitchell,* 515 F. 3d 614, 642 (6th Cir. 2008). Petitioner is not entitled to relief on his fourth claim.

### B. Claim # 5. The due diligence/Confrontation Clause claim.

Petitioner claims that his Sixth Amendment right to confrontation was violated when the prosecution failed to exercise due diligence in attempting to locate Shayvonna Smith for trial and therefore should not have been allowed to use her preliminary examination testimony in lieu of her live testimony.

This Court originally dismissed petitioner's habeas application because petitioner did not exhaust his claim as a federal constitutional issue on his appeal of right with the Michigan Court of

Appeals because he never raised it as a federal constitutional claim before that court, alleging only a violation of state law and procedure. Although petitioner raised this claim as a federal claim before the Michigan Supreme Court, this was insufficient to exhaust the claim for exhaustion purposes. The Court dismissed the petition without prejudice to permit petitioner to return to the state courts to exhaust his Confrontation Clause claim. Although petitioner returned to the state courts and filed a post-conviction motion for relief from judgment, he did not raise his Confrontation Clause claim on post-conviction review.

Petitioner has therefore failed to properly exhaust his fifth claim as a federal constitutional claim with the state courts. Unfortunately, petitioner no longer has any available state court remedies with which to properly exhaust the claim. Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-conviction motion for relief from judgment. *See Gadomski v. Renico,* 258 F. App'x. 781, 783 (6th Cir. 2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999). Petitioner has no remaining state court remedies with which to exhaust this claim. If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he or she can show cause to excuse his or her failure to present the claims in the state courts and actual prejudice to his or her defense at trial or on appeal. *Hannah v. Conley*, 49 F. 3d 1193, 1195-96 (6th Cir. 1995). A claim of actual innocence will excuse this "cause and prejudice" requirement. *Id.* at 1196, fn. 3.

Petitioner failed to show cause for failing to exhaust his Confrontation Clause claim in his post-conviction motion for relief from judgment. While ineffective assistance of appellate counsel

might excuse petitioner's failure to raise this claim on his direct appeal, it does not excuse petitioner's own failure to correctly exhaust this claim in his post-conviction motion. *See Gadomski v. Renico*, 258 F. App'x. at 784. Moreover, petitioner has failed to show evidence establishing his actual innocence to excuse his failure to exhaust his claim. Petitioner does not deny shooting the victim but claims he did so in self-defense. There is some question as to whether petitioner's self-defense claim amounts to a claim of factual innocence which would satisfy the fundamental miscarriage exception to the procedural default rule. *See Caldwell v. Russell,* 181 F. 3d 731, 739-40 (6th Cir. 1999). In the statute of limitations context, the Sixth Circuit has held that a habeas petitioner's claim that he acted in self-defense amounted to a claim of legal innocence, as opposed to factual innocence, and would therefore not toll the limitations period. *See Harvey v. Jones,* 179 F. App'x. 294, 298-99 (6th Cir. 2006)(collecting cases).

Finally, assuming that petitioner had established cause for his default for failing to exhaust his claim, he would be unable to satisfy the prejudice prong, because his claim would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).

The Michigan Court of Appeals agreed that the police and prosecutor had not exercised enough efforts to locate Ms. Smith, but found the error in admitting her preliminary examination testimony to be harmless in light of the fact that Ms. Smith's testimony provided support for petitioner's self-defense claim:

> However, such an error "is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v. Williams*, 483 Mich. 226, 243; 769 NW2d 605 (2009). Defendant's theory at trial was that he had acted in self-defense. Smith testified at the preliminary examination that the victim had initiated a physical fight with defendant by striking defendant with a glass bottle. According to Smith,

it was only after being struck that defendant drew a gun and shot the victim. Smith's testimony supported defendant's theory of the case by tending to show that the victim was the aggressor. In fact, it was Smith's preliminary examination testimony that allowed defendant to argue self-defense because Smith was the only eyewitness to the actual shooting. In other words, if the error made any difference in the outcome of the trial, the difference was to defendant's benefit. Therefore, while the trial court's admission of Smith's prior testimony constituted error, it did not result in a miscarriage of justice and does not warrant reversal.

*People v. Williams*, 2013 WL 3815633, at * 2.

Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,* 274 F. 3d 329, 334 (6th Cir. 2001).

On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court finds it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). In *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003)(per curiam), the Supreme Court held that habeas relief would be appropriate only if a habeas petitioner could show that a state court applied harmless error review in an "'objectively unreasonable' manner."

However, in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. "Citing concerns about finality, comity, and federalism," the Supreme Court in *Brecht* "rejected the *Chapman* standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions." *Fry v. Pliler*, 551 U.S. 112, 116 (2007)(citing *Kotteakos v. United States*, 328 U.S. 750 (1946)). The Supreme Court in *Brecht* indicated that application of the *Chapman* harmless error test by a federal court reviewing a state court conviction on habeas review would undermine a state's "interest in finality," would infringe upon a state's

sovereignty over its own criminal matters, "would undercut the historic limitation of habeas relief to those who had been "'grievously wronged,'" and would impose "'significant 'social costs.'" *Fry,* 551 U.S. at 117 (quoting *Brecht,* 507 U.S. at 637). Thus, *Brecht's* more "forgiving" substantial and injurious effect test for harmless error review applies on habeas review of a state court conviction regardless of whether the state courts engaged in a harmless error analysis of the petitioner's claims. *Fry,* 551 U.S. at 121-22.

In the aftermath of *Fry*, the Sixth Circuit has concluded that the *Brecht* standard is always the test to apply to determine whether an error was harmless and it is thus no longer necessary for a habeas court to ask whether the state court unreasonably applied the *Chapman* harmless error standard before determining whether the error had a substantial and injurious effect or influence on the verdict. *Ruelas v. Wolfenbarger,* 580 F. 3d 403, 412 (6th Cir. 2009). The Sixth Circuit observed that in light of the Supreme Court's holding in *Fry*, "a federal habeas court is never required to determine whether a state court's harmless error determination was 'unreasonable'—*Brecht* handles the work on this, too." *Id.* However, although noting in *Ruelas* that the Supreme Court's holding in *Fry* "subsumes" the holding in *Esparza*, the Sixth Circuit further observed the Supreme Court did not overrule *Esparza. Id.* at 413. Thus, a federal court on habeas review of a state court decision remains free to determine whether the state court's *Chapman* harmless error analysis was reasonable. If it was, than the claim should be denied. *Id.* However, a federal court is also free to proceed directly to use the *Brecht* test to determine whether the error was harmless. *Id.*

The admission of Ms. Smith's preliminary examination testimony did not have a substantial and injurious effect or influence on the jury's verdict, because her testimony provided a basis for petitioner's self-defense claim and no doubt was the main reason that the jury rejected the more

serious second-degree murder charge, finding petitioner guilty only of the lesser offense of voluntary manslaughter. The erroneous admission of hearsay or other inadmissible evidence is harmless error when the evidence or testimony benefits the criminal defendant. *See Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997)(admission of nontestifying codefendant's confession was harmless because codefendant's confession was thoroughly reliable and consistent with defendant's own description of homicide and was even helpful to defendant); *United States v. Frattini*, 501 F.2d 1234, 1237 (2nd Cir. 1974)(admission of hearsay statement implicating one co-defendant in illegal drug sale was harmless error as to the second co-defendant, where the hearsay statement was actually helpful to the second co-defendant); *Silva v. Roden*, 52 F. Supp. 3d 209, 239 (D. Mass. 2014)(admission of police officer's ballistics report in murder trial in violation of Confrontation Clause was harmless, and therefore did not warrant habeas relief; petitioner admitted to shooting victim, petitioner admitted that gun used in murder was his, and defense counsel used ballistics report to further petitioner's claim of self-defense). In light of the fact that Ms. Smith's preliminary examination testimony was helpful to petitioner, the admission of this evidence was harmless error at most.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S.

473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. [2] The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V. <u>ORDER</u>

Based upon the foregoing, **IT IS ORDERED** that:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner will be denied leave to appeal *in forma pauperis*.


Dated: September 6, 2017                    s/Sean F. Cox_____
                                            Sean F. Cox
                                            U. S. District Judge

---

[2] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


ANTHONY LAMAR WILLIAMS,

      Petitioner,                         Civil No. 2:14-CV-10408
                                            HONORABLE SEAN F. COX
                                            UNITED STATES DISTRICT COURT

v.

SHERMAN CAMPBELL,

      Respondent,
_____/

PROOF OF SERVICE

I hereby certify that on September 6, 2017, the foregoing document was served on counsel of record via electronic means and upon Anthony Lamar Williams via First Class mail at the address below:

ANTHONY LAMAR WILLIAMS 235097
CARSON CITY CORRECTIONAL FACILITY
10274 BOYER ROAD
CARSON CITY, MI 48811

                                   s/J. McCoy_____
                                   Case Manager